61 F.3d 916
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 SOUTHERN UTE INDIAN TRIBE, doing business as Red Willow
Production Company, Plaintiff-Appellee,
v.
LA PLATA COUNTY, Board of County Commissioners, State of
Colorado; Fred Klatt, Shirley M. Baty, Frank Joswick,
Commissioners of La Plata County, Colorado; Ed Murray,
Treasurer of La Plata County, Colorado; Craig Larson,
Assessor of La Plata County, Colorado; Colorado, State of;
Revenue, State of Colorado, Department of; Renny Fagan,
Executive Director of Department of Revenue, State of
Colorado; Oil and Gas Conservation Commission of the State
of Colorado; Susan Mccannon, acting Director of the Oil &
Gas Conservation Commission, State of Colorado; Property
Taxation, State of Colorado, Division of; Mary Huddleston,
Property Tax Administration for the State of Colorado,
Defendants-Appellants.
State of California; State of South Dakota; State of Utah;
State of North Dakota; Saginaw Chippewa Indian Tribe of
Michigan; Shoshone and Northern Arapaho Tribes of the Wind
River Reservation; Council of Energy Resource Tribes;
Jicarilla Apache Tribe; Ute Indian Tribe of the Uintah and
Ouray Reservation; Native Village of Karluk; the Rosebud
Sioux Tribe; the Confederated Tribes of the Umatilla Indian
Reservation; the Crow Tribe of Indians; the Oglala Sioux
Tribe; Yakama Indian Nation, Amici Curiae.
 No. 94-1310.
 United States Court of Appeals, Tenth Circuit.
 July 20, 1995.
 
 Before KELLY, SETH, and HENRY, Circuit Judges.
 
 
 1
 ORDER AND JUDGMENT*
 
 
 2
 This appeal is brought by the Board of County Commissioners of La Plata County, the State of Colorado and various officials of those parties. It challenges the district court's grant of summary judgment to the Southern Ute Indian Tribe. Because this is a final decision of the United States District Court for the District of Colorado, our jurisdiction is proper under 28 U.S.C. 1291.
 
 
 3
 The Southern Ute Indian Tribe initiated this action requesting a declaratory judgment that it is exempt or immune from the imposition of ad valorem taxes on lands and mineral interests held by the Tribe or tribal enterprises within its reservation boundaries. The Tribe's Complaint thus broadly encompasses any property meeting the above stated criteria. The incident which appears to have precipitated the Tribe's claim at this time was the potential taxation of property acquired by the Tribe's business enterprise, Red Willow Production Company, from Conoco, Inc. about January 15, 1993. Ad valorem taxes for 1992, the year prior to the Tribe's ownership of the property acquired from Conoco, were assessed against Conoco and subsequently paid by Conoco. By this payment by Conoco of the assessment the issue as to this tract became moot, and we are left only with general assertions as to real property and personal property without descriptions.
 
 
 4
 The basic Claim for Relief in the Complaint stated that the Tribe seeks:
 
 
 5
 "Preliminary and permanent injunctive relief against Defendants prohibiting them from:
 
 
 6
 "(a) Seeking to collect any state or local taxes on real or personal property, including mineral interests, royalty interests, working interests, oil and gas wells, and oil and gas equipment owned by the Tribe located within the boundaries of the Southern Ute Indian Reservation."
 
 
 7
 Pending its determination regarding the merits of the Tribe's claim, the district court granted a preliminary injunction barring the County or State from taxing or otherwise attaching or encumbering Southern Ute owned property or proceeds derived therefrom.
 
 
 8
 After expressing concern regarding the ripeness of the Tribe's claim, the district court nevertheless addressed the merits of the action. The court then held that the County and State, absent Congressional action, "may not directly tax real property interests held by the Tribe in fee simple nor may the County and State tax mineral interests owned by the Tribe relating to lands within the boundaries of the Reservation."
 
 
 9
 The trial court's concern was expressed as follows:
 
 
 10
 "My initial concern with this case is ripeness. The only taxes which have actually been assessed are those concerning the property the Tribe acquired from Conoco, Inc., a former third-party defendant. Conoco paid those taxes, leading the County and State to move for dissolution of the preliminary injunction. I denied that motion, holding it was clear that the Defendants sought to impose taxes on any property held by the Tribe in fee, as evidenced by their argument on summary judgment."
 
 
 11
 It is the issue of ripeness raised initially by the district court with which we are first concerned. Although this question is not expressly raised in the issues presented to this court, "when a ripeness question in a particular case is prudential, we may raise it on our own motion[.]" Reno v. Catholic Social Services, Inc., --- U.S. ----, 113 S.Ct. 2485, 2496 n. 18. Even though a dispute may exist, if it has not developed factually to present a definitive issue upon which a court can act, the doctrine of ripeness applies which requires that federal courts decline to then decide those issues which are not yet fit for adjudication. Regional Rail Reorganization Act Cases, 419 U.S. 102, 138. This doctrine concerns prudential reasons for refusing to exercise jurisdiction. Buckley v. Valeo, 424 U.S. 1, 114. A federal court cannot render a decision which is merely advisory. See Poe v. Ullman, 367 U.S. 497; CSG Exploration Company v. Federal Energy Regulatory Commission, 930 F.2d 1477, 1482 (10th Cir.).
 
 
 12
 As mentioned by the trial court, no assessment of property of the Tribe has been made except the former Conoco property, and that issue is moot. An assessment is the prerequisite to "taxation" and none has been made to create the issues sought to be litigated. Neither the Complaint nor the record describes any particular piece of property concerned. We have only a general claim that taxation would be improper.
 
 We agree with the trial court's statement:
 
 13
 "Differences in the manner in which certain parcels were originally patented may affect whether they are taxable today. For example, property originally patented by homesteaders under early laws dealing with the Ute Indians may require different tax treatment than property patented by individual Indian allottees under those same laws. Furthermore, the Tribe itself has not been clear as to whether any property it now owns in fee falls within the latter category. Finally, it is not clear, with respect to the Tribe's ownership of certain forms of mineral interests, whether the surface rights are held in trust or in fee and by whom. Therefore, without more specific information on the type of property sought to be taxed, my treatment of these motions is necessarily general."
 
 
 14
 A review of the Southern Ute Complaint further demonstrates the problem. The Complaint states that "[t]he County of La Plata ... has threatened to impose ad valorem taxes upon the mineral interests and equipment acquired by the Tribe", and further alleges that "[t]he State of Colorado ... has threatened to impose taxes ... upon the Tribe associated with the Tribe's operations on land within the Southern Ute Indian Reservation." (Emphasis added.) The threat of imposed taxes does not supply the finality necessary to a determination that a claim is fit for judicial review. See Abbott Laboratories v. Gardner, 387 U.S. 136 (a ripeness determination depends upon the fitness of an issue for judicial resolution and the hardship to the parties of withholding judicial consideration). See also Sierra Club v. Yeutter, 911 F.2d 1405, 1417 (10th Cir.). Further, we conclude that delaying consideration until such time as there is an actual assessment does not impose a hardship on the parties. Abbott Laboratories, 387 U.S. at 149.
 
 
 15
 Accordingly, we must hold that this action is not ripe for adjudication. There has been no action taken by the Appellants herein which has been "felt in a concrete way by the challenging part[y]." Abbott Laboratories, 387 U.S. at 148-49.
 
 
 16
 We therefore conclude that the district court erred in granting summary judgment. Accordingly, we DISMISS this appeal, and REMAND with directions to VACATE the previous judgment of the district court, and dismiss the Complaint without prejudice.
 
 
 17
 IT IS SO ORDERED.
 
 
 18
 HENRY, Circuit Judge, dissenting.
 
 
 19
 The majority's conclusion is well-stated and thoroughly defensible. Though the district court was also concerned with ripeness, I believe it made the correct decision to reach as many issues as it could both for the sake of efficiency and because of the nature of the parties and the "legislative confusion" in this area. See Memorandum Opinion and Order, Brief of County Appellants, Attachment A, at 2-3. I do not, therefore, agree with the majority's conclusion that the issues in this case are not ripe for adjudication.
 
 
 20
 In my opinion, the fact that state and county officials have threatened to impose ad valorem taxes and various mineral taxes on non-trust fee lands is sufficient to establish the ripeness of the dispute. " "One does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." ' " Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 581-82 (1985) (quoting Regional Rail Reorganization Act Cases, 419 U.S. 102, 143 (1974) (quoting Pennsylvania v. West Virginia, 262 U.S. 553, 593 (1923))).
 
 
 21
 I view this case as analogous to Crow Tribe of Indians v. Montana, 819 F.2d 895 (9th Cir.1987), aff'd, 484 U.S. 997 (1988). There, the district court concluded, inter alia, that the application of state severance and gross proceeds taxes to coal mined within the boundaries of a reservation was not ripe for adjudication because no mining had occurred there. The Ninth Circuit reversed, concluding that "[t]he Tribe need not wait for mining to commence to challenge the taxes' application to coal mined within the Reservation boundaries.... The taxes are already in effect and Montana intends to apply them to this coal." Id. at 903.
 
 
 22
 I think the same is true here. The appellees intend to apply ad valorem taxes and certain taxes on minerals to non-trust lands held in fee by the Tribe within the boundaries of the Ute Reservation. The Tribe has sought prospective relief to prevent this taxation. Moreover, the applicable law has been analyzed by the district court, the parties, and numerous amici curiae.
 
 
 23
 I do agree with the district court's observation that the parties have discussed some of the issues in a very general way. I think this is particularly true of some of the mineral taxes and that, as to some issues concerning mineral taxation, further analysis might reveal that the current record is insufficient to make the necessary determinations as to whether these taxes are proper within reservation boundaries. Nevertheless, I believe that the dispute is concrete enough on a number of the issues and that, given the time and effort expended by the parties, the district court, and this court, we should proceed to the merits of as many issues as possible.
 
 
 24
 Accordingly, I respectfully DISSENT.
 
 
 
 *
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470